RECEIVED
IN ALEXANDRIA, LA.

MAR 0 8 2010

TONY R. MOORE CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

MARTIN BRYAN TAYLOR,                CIVIL ACTION
            Appellant              NO. CV09-00606-A

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER     JUDGE DEE D. DRELL
OF SOCIAL SECURITY,                 MAGISTRATE JUDGE JAMES D. KIRK
            Appellee


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Martin Bryan Taylor ("Taylor") filed applications for disability insurance benefits ("DIB") (Tr. p. 47) and supplemental security income ("SSI") (which is not in the administrative transcript) on May 24, 2006, alleging a disability onset date of May 3, 2006 (Tr. p. 47) due to pain in his knees, erosion of his stomach lining due to medications, depression, and anxiety (Tr. p. 63).  Those applications were denied by the Social Security Administration ("SSA") (Tr. p. 41).

A de novo hearing was held before an administrative law judge ("ALJ") on July 24, 2007, at which Taylor appeared with his attorney (Tr. p. 254).  The ALJ found that, although Taylor suffers from "severe impairments" of bilateral knee pain, chondromalacia of the patella with patellofemoral arthritis (left knee), morbid obesity, and hypertension (Tr. p. 18), he has the residual functional capacity to perform the full range of sedentary work

(Tr. p. 20) and, pursuant to Rule 201.28 of Section 201.00[1] of 20 C.F.R. part 404, Subpart P, Appendix 2 ("the Medical-Vocational Guidelines"), Taylor was not under a disability as defined by the Social Security Act ("SSA") at any time through the date of the ALJ's decision on October 9, 2007 (Tr. p.24).

The Appeals Council declined to review the ALJ's decision (Tr. p. 4), so the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Taylor next filed this appeal for judicial review of the Commissioner's final decision. The sole issue raised by Taylor for review on appeal is whether the ALJ erred at Step 2 in failing to properly evaluate the severity of all of his medically-established severe impairments.

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, a plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. The plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C.

---

[1] The ALJ's decision erroneously cites section 204 (heavy work) of the Medical-Vocational Guidelines instead of section 201 (sedentary work) (Tr. p. 23).

. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, the plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence

3

which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

<u>Summary of Pertinent Facts</u>

Taylor has a GED (Tr. p. 258) and past relevant work experience as a platform operator in oilfield production (1992-2006) and a commercial painter/blaster (1989-1991) (Tr. p. 71).

1. Medical Records

In May 2005, Taylor was evaluated by Dr. Pankajrai S. Shroff,

an internal medicine physician, who diagnosed hypertension and anxiety/depression, and advised Taylor to have a CT scan of the head, a carotid doppler study, and basic lab work, which Taylor indicated he did not want to do at that time (Tr. p. 98). In August 2005, Taylor saw Dr. Shroff for headaches, and Dr. Shroff continued Taylor on his Diovan and ordered blood work (Tr. p. 99).

In January 2006, Dr. Shroff saw Taylor for a work-related right knee injury and referred him to an orthopedist (Tr. p. 100).

On January 17, 2006, Taylor was examined by Dr. John W. Stafford, a general practice physician, for right knee pain (Tr. p. 93). Taylor reported having stepped over a pipe at work and feeling a "pop" in his right knee (Tr. p. 93). Dr. Stafford diagnosed subjective right knee pain and a possible cartilaginous injury, plus hypertension, and prescribed isometric exercises, a return to regular work, an MRI of the right knee, and Prednisone for one week (Tr. pp. 93-94). An MRI of Taylor's right knee showed mild focal chondromalacia of the patella without evidence of any meniscal tear or any other internal knee problems other than mild degeneration of the cartilage which is normally due to wear and tear (Tr. pp. 86-88, 106). Taylor was prescribed Prednisone and told to reduce his activity (Tr. p. 86).

Dr. John P. Schutte, an orthopedic surgeon, also saw Taylor in January 2006, noted he was 6'2" tall and weighed 260 pounds, and initially recommended that Taylor refrain from excessive stooping, squatting, and stair climbing (Tr. p. 123). Dr. Schutte gave Taylor a Lidocaine/Celestone injection in both knees in February

5

2006 (Tr. p. 122), put him on light duty, and ordered an MRI in March 2006 (Tr. p. 121). The MRI showed minimal fluid in the bursa and a small cyst, but Dr. Schutte noted those did not cause Taylor's knee pain (Tr. p. 119).

In April 2006, Taylor was evaluated for a second opinion on his knee pain by Dr. Douglas N. Liles, an orthopedic surgeon (Tr. p. 109). Dr. Liles reviewed Taylor's x-rays and MRI and found his knees were normal for his age, stable, and without effusion (Tr. p. 109). Due to Taylor's complaints of discomfort, Dr. Liles recommended Taylor have a rheumatological work-up to check for inflammatory arthritis (Tr. p. 109). Dr. Liles recommended that Taylor return to his previous level of employment pending the findings of the blood work (Tr. p. 109). Taylor's rheumatological blood work had normal results (Tr. pp. 112-116).

In May 2006, Dr. Schutte found that, although Taylor reported more knee pain than he has ever had and that he can barely walk, Taylor had full ranges of motion in both knees and no effusion or fluid in his knees (Tr. p. 118). Dr. Schutte stated there were no physical findings to support Taylor's complaints of severe pain, noted that Taylor had failed to tell him that he had gotten a second opinion as to his knees, and released him to work without restriction (Tr. p. 118).

Taylor went to Dr. Fairbanks, a family medicine physician, in June 2006 for his knee pain (Tr. p. 185). Dr. Fairbanks noted Taylor's x-rays were completely normal, gave Taylor an injection in his left knee and asked to review his MRI reports (Tr. p. 185).

6

After reviewing the MRIs, Dr. Fairbanks noted that Taylor has chondromalacia in the left knee, a medial meniscus lesion in the right knee, and recommended a diagnostic arthroscopy of each knee, noting a 75 % probability of good results (Tr. p. 184). Taylor underwent the arthroscopies in August 2006 and felt much better without pain medication; he then underwent physical therapy and Dr. Fairbanks encouraged Taylor to reduce his weight (Tr. p. 184). In March 2007, Dr. Fairbanks wrote that Taylor has "advancing arthritic disease in both knees" which does not keep him from work, but does keep him from heavy manual labor and climbing stairs, and precludes him from doing his previous offshore work (Tr. p. 217).

In April 2006, Taylor also reported bright red blood in his stools for two days; Dr. Shroff referred him to a gastroenterologist (Tr. p. 101). In May 2006, Taylor underwent a colonoscopy which showed polyps, erosions, and erythema in the duodenum compatible with severe erosive duodenitis and gastritis (Tr. p. 128). It was noted that Taylor drinks bourbon and smokes one to two packs of cigarettes per day (Tr. p. 128). Taylor was diagnosed with a helicobacter pylori infection, epigastric abdominal pain, erythema due to gastritis, and nausea (Tr. p. 129). After a follow-up colonoscopy in June 2006, Taylor was taken off of Prevacid and placed on Carafate (Tr. p. 127). The surgical report on the polyps showed there was no high grade dysplasia in any of the polyps and the endoscopy was otherwise normal to the cecum (Tr. pp. 161-164).

A Psychiatric Review Technique Form was filled out by

7

consulting psychologist Dr. Tom Ray in June 2006 (Tr. p. 144). Dr. Ray reviewed Taylor's medical records and found Taylor suffers from non-severe impairments of affective disorder (depression) and anxiety-related disorder (anxiety) (Tr. pp. 144, 147, 149). Dr. Ray also found Taylor has mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. p. 154).

In November 2006, Taylor was evaluated at Louisiana Pain Care for complaints of pain in his knees, neck, shoulders, and lower back (Tr. p. 192). Taylor was referred for MRIs of his cervical and lumbar spines (Tr. pp. 187-188), but those results were not mentioned in subsequent reports from the Louisiana Pain Care Clinic (Tr. pp. 194-7). Taylor was referred to Monroe Mental Health (Tr. pp. 192, 195), encouraged to attend Alcoholics Anonymous (Tr. pp. 193, 195, 196), and referred to the LSU Health Sciences Center Orthopedic Clinic (Tr. p. 196).

Taylor was admitted to the Glenwood Regional Medical Center in December 2006, where he was diagnosed and treated for a mood disorder not otherwise specified and alcohol dependence (Tr. pp. 199-200). Taylor was discharged in January 2007 with prescriptions for Ultram, Campral, and Cymbalta (Tr. p. 199).

X-rays of Taylor's right knee in January 2007 showed no edema and were negative (Tr. p. 90). Additional x-rays in March 2007 were normal (Tr. p. 214).

At the LSU Health Sciences Center ("LSUHSC") in March 2007, Taylor reported mild to moderate bilateral knee pain for one year

8

despite arthroscopic surgery (Tr. p. 206). Taylor's knees did not have effusion or crepitus, were not hot, had no pain on movement, and had full ranges of motion (Tr. pp. 206-207); x-rays were unremarkable (Tr. pp. 213-214). Arthritis was diagnosed and Taylor was prescribed Ultracet (Tr. p. 207).

In April 2007, Dr. Shroff treated Taylor's left knee pain with local heat (Tr. p. 228). In May and June 2007, Taylor was treated by Dr. Shroff for hypertension, anxiety/depression, and knee pain (Tr. pp. 222-223). Dr. Shroff explained that, since Taylor was on Medicaid, he would need to see an orthopedist at LSUHSC or the orthopedic surgeon who had performed the arthroscopic surgery on his knees (Tr. p. 223). Although Taylor's cholesterol and triglycerides were too high, Taylor decided to treat that problem through diet (Tr. pp. 222, 226-227).

In May 2007, Taylor went to the emergency room at LSUHSC for bilateral knee pain (Tr. pp. 233-234). Although there was diffuse moderate pain on palpation, Taylor did not have any heat, effusion, or crepitus, had full ranges of motion, and ambulated easily with a normal gait (Tr. p. 233). Taylor was diagnosed with "knee pain, nos" and prescribed Ultram and Lortab (Tr. p. 234). A June 2007 MRI of Taylor's knees, due to "knee pain and giving way," indicated chondromalacia of the patella with patellofemoral arthritis, morbid obesity, and quadriceps atrophy (Tr. p. 237).

Taylor was evaluated by Dr. Bruce S. Senter, an orthopedic surgeon at the Mississippi Spine Clinic, in March 2008 for complaints of significant low back pain, which had been worse since

9

a car accident on October 21, 2007, and woke him up at night (Tr. p. 250).  It was noted that Taylor was taking Darvocet, Ultram, and Flexeril, smoked a pack a day, did not drink alcohol, had not worked since May 2006, was 6'2" tall and weighed 274 pounds (Tr. pp. 250-251).  X-rays showed marked degenerative disc disease with degenerative scoliosis, and mild changes at L4-5 and L5-S1; Taylor was diagnosed with significant lumber spondylosis, but was essentially normal neurologically (Tr. pp. 250-251).  Dr. Senter told Taylor that he had already had maximum conservative case and he could not expect a good result from surgery (Tr. p. 251).  Dr. Senter stated he would reconsider surgery if Taylor quit smoking and lost a significant amount of weight (Tr. p. 251).  No medications were prescribed (Tr. p. 251).

### 2. July 2007 Administrative Hearing

At his July 2007 administrative hearing, Taylor testified that he was 43 years old, 6'2" tall, weighed about 265 pounds, and had lost about 35 pounds (Tr. p. 257).  Taylor testified that he lived with his wife, who attended college, and shared custody of his daughter with his ex-wife (Tr. pp. 257-258).  Taylor testified that he did not have any income (Tr. p. 258).  Taylor completed the ninth grade in regular classes in school, then later earned a GED (Tr. p. 258).  Taylor worked in oil field production for about 26 years, doing equipment maintenance and reports, heavy lifting and climbing, and operating large equipment such as cranes (Tr. pp. 258-259).  Taylor stopped working in the oil field after he injured his knee at work; Taylor testified that he did not receive any

10

compensation, payment of medical bills, or Workers' Compensation and he currently has a lawsuit due to that (Tr. p. 259). Previously, Taylor owned a paint contracting business for which he did things like cost estimates (Tr. pp. 258-259).

Taylor testified that Dr. Fairbanks told him he could return to work that was not heavy, and recommended that he get a stationary bicycle and exercise on it after his knee surgery (Tr. p. 260). Taylor testified that exercising on the bicycle had caused extreme, nauseating pain (Tr. p. 260).

Taylor testified that his hospitalization at Brentwood was due in part to alcohol; Taylor testified that he had used alcohol as a substitute for pain medication (Tr. p. 261). Taylor testified that he no longer drinks alcohol (Tr. p. 261).

Taylor testified that his father supports him financially (Tr. p. 262). Taylor testified that he cannot do any work, even sedentary, because of extreme, constant pain (Tr. p. 262). Taylor testified that he sits on a stool to cook and wash dishes at home (Tr. p. 262), and that even walking back and forth to the bathroom causes him so much pain that he has to lie down three of four times during the day, for thirty minutes to three hours (Tr. p. 262). Taylor testified that his leg "pops," and after it pops a few time, it begins hurting severely (Tr. p. 266). Taylor testified he has tried not taking pain pills, but the pain is too severe (Tr. p. 266).

Taylor testified that he gets up in the mornings and has coffee while he sits on the back porch, he mostly reads during the

day and talks to family members on the telephone, he cooks while sitting on a stool, grocery shops sometimes, and drives his car two or three times a week to run errands for his wife (Tr. p. 263). Taylor testified that he drive an automatic transmission car (Tr. p. 258), and uses the motorized, riding shopping cart in the grocery store (Tr. p. 268). Taylor testified he is not supposed to drive when he takes the pills, and his wife does most of the driving (Tr. p. 263). Taylor also testified that he sometimes plays on the computer while he is laying or sitting down (Tr. pp. 266-267).

Taylor testified that he also has severe duodenal erosion, according to his gastroenterologist, Dr. Tillman (Tr. p. 265). Taylor also has some back and neck pain and numbness in his left hand (Tr. p. 266). Taylor testified that he has pain in his lower back which is sometimes "pretty bad" across his back, but does not go down his legs (Tr. p. 168). Taylor also testified that his neck pain causes come numbness in his left hand, which causes him to drop things (Tr. p. 268).

Taylor testified that, when he was 16 years old and working on a small drilling rig, he was hit in the back by a tone cable and knocked across the platform (Tr. p. 267). Taylor testified that his doctors recommended immediate surgery, but he refused and eventually got better on his own and returned to work (Tr. p. 267). Taylor further testified that, when he was 18 years old and working on an offshore drilling rig, a one hundred pound sack of drilling mud slipped and hit him on the head, which probably caused his

current neck problems (Tr. p. 267). Taylor testified that, when he was 41 years old and working offshore, he fell off of a tank, which probably caused the bulging discs in his back (Tr. p. 267).

Taylor testified that he is very nervous and short-tempered and takes nerve pills (Lexapro) (Tr. p. 266). Taylor testified that he also suffers from dizziness and tiredness, but is not sure whether that is a medication side effect (Tr. p. 268). Taylor testified that he has problems with attention and memory (Tr. p. 269).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Taylor (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial

burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Taylor has not engaged in substantial gainful activity since May 3, 2006 (Tr. p. 18) and has severe impairments of bilateral knee pain, chondromalacia of the patella with patellofemoral arthritis (left knee), morbid obesity, and hypertension (Tr. p. 18), but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. pp. 18-20). The ALJ also found that Taylor is unable to perform any of his past relevant work as a platform operator or a painter/sandblaster (Tr. p. 23).

At Step No. 5 of the sequential process, the ALJ further found that Taylor has the residual functional capacity to perform the full range of sedentary work (Tr. p. 20). The ALJ found that Taylor is a younger individual with a high school education (GED) and that transferability of work skills is not relevant (Tr. p. 23). The ALJ concluded that there are a significant number of jobs in the national economy which Taylor can perform and that a finding of "not disabled" was directed by Rule 201.28 of the Medical-Vocational Guidelines (Tr. p. 23). The ALJ concluded that Taylor was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on October 9,

14

2007 (Tr. p. 24).

### Law and Analysis

Taylor contends the ALJ erred at Step 2 in failing to properly evaluate the severity of all of his medically-established severe impairments.  Taylor contends specifically that the ALJ failed to consider Taylor's (1) severe cervical and lumbar impairments, (2) the combination of Taylor's bilateral knee arthritis and obesity causing constant knee pain, (3) his severe depression, and (4) the combined effects of Taylor's severe cervical spondylosis, lumbar spondylosis, chronic knee pain, severe obesity, severe pain, and the medication side effects of fatigue and drowsiness on his residual functional capacity.

1.

Taylor contends the ALJ failed to recognized and consider his severe cervical and lumbar impairments.  However, although MRI's were taken of Taylor neck and back in 2006, nothing was done concerning those test results and Taylor's complaints of pain continued to concern his knees rather than his back and neck.  It was not until March 2008 that Taylor had a full evaluation of his back problems at the Mississippi Spine Clinic.  At that time, Taylor reported that he had been in a car accident on October 21, 2007, which made his back and neck problems worse.

The ALJ's decision was issued on October 9, 2007, before the car accident and before Taylor was seen by Dr. Senter at the Mississippi Spine Clinic in March 2008.  However, Taylor submitted his new evidence of neck and spine pain to the Appeals Council,

15

which found the new evidence was insufficient to change the ALJ's decision (Tr. p. 4).

Before the car accident, Taylor's lumbar and cervical spondylosis did not appear to be particular problems for him; he did not mention them in his application for benefits, and he rarely mentioned neck of back pain to his doctors.  Therefore, Taylor's evidence of increased pain from cervical and lumber spondylosis, which occurred after the ALJ's/Commissioner's decision, does not relate to the period for which benefits were denied[2] and may not be considered in this claim.  Instead, the evidence concerning the car accident, Taylor's resulting complaints of increased back and neck pain, and Dr. Senter's medical evaluation, are all dated after the ALJ's October 9, 2007, decision in this case and thus constitute "new" evidence which may form the basis for a new claim.  Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985)(the deterioration of a claimant' conditions which occurred after the date of the ALJ's/Commissioner's decision may form the basis of a new claim).  Also, Salazar v. Chater, 74 F.3d 1236, *5 (5th Cir. 1995).

Substantial evidence supports the Commissioner's decision that Taylor did not suffer from severe lumbar and cervical impairments at any time through the date of the ALJ's decision on October 9, 2007.  This ground for relief is meritless.

---

[2] "The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.976(b)(1).

2.

Next, Taylor contends the ALJ erred in failing to consider the combination of Taylor's bilateral knee arthritis and obesity causing constant knee pain.

Obesity should be considered in combination with other impairments in making the residual functional capacity determination and in discussing the claimant's ability to perform sustained work activities. <u>Beck v. Barnhart</u>, 205 Fed.Appx. 207, 212 (5th Cir. 2006), citing.  Obesity is not a listed impairment, although it can reduce an individual's occupational base for work activity in combination with other ailments. <u>Beck</u>, 205 Fed.Appx. at 211, citing SSR 02-1p, "Evaluation of Obesity."

Although the ALJ did not specifically discuss the impact of Taylor's obesity on his ability to work, the ALJ found Taylor suffers from "morbid obesity" and stated that he considered the effects of Taylor's obesity on his residual functional capacity to work in accordance with S.S.R. 02-01p (Tr. pp. 18, 21).

Therefore, the ALJ did not disregard the combined effects of Taylor's obesity with his bilateral knee pain.[3]  This ground for relief is meritless.

3.

Taylor also argues the ALJ erred in failing to consider his depression and anxiety.  However, the ALJ found Taylor's depression was not a severe impairment.  Taylor did not submit any medical

---

[3] The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it. <u>Hammond v. Barnhart</u>, 124 Fed.Appx. 847 (5th Cir. 2005).

17

records showing he was still undergoing treatment for depression and anxiety. The medical records referred to by Taylor in his brief are from 2006 through January 2007 and indicate depression/anxiety stemming from the fact that his wife had left him and he was drinking too much alcohol. At the time of the October 2007 administrative hearing, Taylor was no longer drinking and was reunited with his wife. Taylor admitted he had been drinking in lieu of taking pain medication and stated he was no longer drinking alcohol.

Since there is no evidence that Taylor's depression/anxiety cause limitations on his activities of daily living or affect his ability to work, the ALJ/Commissioner did not err in concluding Taylor's depression and anxiety are not severe impairments.

4.

Taylor also contends the ALJ erred in evaluating the combined effects of Taylor's severe cervical spondylosis, lumbar spondylosis, chronic knee pain, severe obesity, severe pain, and medication side effects (fatigue and drowsiness) on his residual functional capacity. Specifically, Taylor argues the ALJ failed to properly consider the pain caused by all of his impairments, and disregarded his testimony that his medications cause fatigue and drowsiness.

Pain may constitute a nonexertional factor that can limit the range of jobs a claimant can perform. Carter v. Heckler, 712 F.2d 137, 142 (5th Cir. 1983). Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. §

18

423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.  The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence.  Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989), citing Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985).

The mere existence of pain is not an automatic ground for obtaining disability benefits.  Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).  A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §404.1529(c)(4).  Subjective complaints of pain must be corroborated by objective medical evidence.  Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2000).

Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment.  Chambliss, 269 F.3d at 522.

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.  Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5th Cir.

19

1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983).  The
ALJ's decision on the severity of pain is entitled to considerable
judicial deference.  James v. Bowen, 793 F.2d 702, 706 (5th Cir.
1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).  Such a
credibility determination is within the province of the ALJ.
Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v.
Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991).  Hence, the law
requires the ALJ to make affirmative findings regarding a
claimant's subjective complaints and articulate his reasons for
rejecting any subjective complaints.  Falco v. Shalala, 27 F.3d
162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Taylor's pain and
credibility (Tr. pp. 21-22):

> "The undersigned notes the claimant complained of severe
> pain. ...The record reveals the claimant is taking Lortab
> for pain, a medication recommended for the treatment of
> mild to moderate pain.  Were the claimant suffering the
> type of severe, persistent, intractable pain which
> precludes all work activity, the Administrative Law Judge
> is persuaded the claimant's treating physician would have
> prescribed one of the many medications designed to treat
> severe pain.  While this does not mean the claimant is
> entirely pain-free, taken as a whole, it falls short of
> demonstrating the presence of pain that is so severe the
> claimant cannot perform any work on a regular and
> continuing basis.
> "The undersigned finds that claimant's allegations are
> not supported by the evidence of record.  Therefore they
> are not fully credible.  The undersigned cannot ignore
> the fact that claimant seeks treatment from a general
> practitioner, not a specialist, for his severe orthopedic
> problems.  The undersigned further notes the claimant
> testified to massive complaints, which are overstated,
> including the need to lie down 3 to 4 times a day for
> half an hour to a couple of hours at a time.  The
> undersigned finds there is no substantial medical
> evidence to support such severe limitations.  The
> claimant testified that his medications caused fatigue
> and dizziness; however, the record is void of any such

complaint to a physician.  The  claimant was instructed
to exercise and lose weight.  In fact Dr. Fairbanks
instructed the claimant to get a stationary bike and
start peddling the miles away.  However, the claimant has
not followed the instructions of these physicians.  As
such, claimant's testimony regarding his abilities is
credible only the extent it is consistent with the
findings herein."

Since the ALJ in this case has made the mandatory indication

of the basis for his credibility choices concerning claimant's

complaints, including pain and medication side effects, and since

his choices are not unreasonable, his finding that Taylor's pain

would not prevent him from performing sedentary work is proper.

See Carry v. Heckler, 750 F.2d 479, 485-86 (5th Cir. 1985).

Although Taylor does, as he argues in his brief, take another pain

medication in addition to Lortab (Ultram) (Tr. p. 234), that in

itself does not mean Taylor suffers from disabling pain.  In fact,

none of Taylor's physicians has found that he cannot work.

Moreover, since Taylor was not, at the time of the ALJ's

decision, suffering from severe impairments of depression/anxiety

or cervical or back pain, as discussed above, the ALJ did not err

by failing to consider their effects on his residual functional

capacity.

Therefore, substantial evidence supports the Commissioner's

conclusion that the combined effects of Taylor's pain and

depression/anxiety do not preclude him from performing the full

range of sedentary work.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the

final decision of the Commissioner be AFFIRMED and Taylor's appeal

DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 8th day of March 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE